

FILED

SEP 3 0 2008

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

|  |  |
|---|---|
| In re<br><br>AZTECA CONSTRUCTION, INC.,<br><br>      Debtor.<br>_____<br><br>MICHAEL F. BURKART, Chapter 7<br>Trustee,<br><br>      Plaintiff,<br><br>vs.<br><br>THOMAS J. TANKE,<br><br>      Defendant.<br>_____ | Case No. 04-34185-A-7<br><br><br><br><br><br><br><br>Adv. No. 06-02408 |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This adversary proceeding came on regularly for trial. The plaintiff, Michael F. Burkart, the chapter 7 trustee of debtor Azteca Construction, Inc. ("Azteca"), appeared by his attorney of record, Bernard S. Greenfield. The defendant, Thomas J. Tanke, appeared without counsel.

The trial was a court trial. While the defendant requested a jury trial, the court concluded for the reasons appended to the

1 | minutes of the February 4, 2008 pretrial conference that the
2 | defendant had waived his right to a jury trial.
3 | Having considered the evidence as well as the post-trial
4 | briefs of the parties, pursuant to Fed. R. Civ. P. 52(a), made
5 | applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7052
6 | and 9014, the court makes its findings of fact and conclusions of
7 | law.

**Findings of Fact**

1. Beginning on January 1, 2002, and continuing until Azteca filed its bankruptcy petition on December 14, 2004, Azteca was insolvent.

2. Using credit cards belonging to Azteca, the defendant made the charges summarized in the credit card usage summaries, Exhibits 7 and 16, for his personal purposes and benefit rather than for the benefit of his employer, Azteca. These charges were not authorized by Azteca.

3. The defendant wrote, or caused to be written, checks drawn on Azteca's bank accounts that were payable to himself or for his benefit. These checks were not authorized by Azteca.

4. In other words, the defendant made or arranged numerous unauthorized transfers of Azteca funds for his personal purposes and benefit. Beginning on or about March 25, 2000 and continuing until the defendant's voluntarily left his employment at Azteca on July 23, 2004, he misappropriated a total of $136,518.02 from Azteca by using its credit cards and bank checks for his personal use and benefit. The funds misappropriated are summarized in Exhibits 7, 8, 9, 10, 14, and 16, as well as Appendix One to these findings and conclusions.

5. The defendant concealed his misappropriations by representing they were for Azteca's business, creating false invoices, altering carbon copies of checks, submitting false field check reports, and endorsing checks made payable to Azteca by signing or causing to be signed the name of Rafael M. Martin, Azteca's president, without his knowledge or consent, and then appropriating those checks for his personal benefit.

6. Azteca received no consideration for any of the foregoing transfers. The defendant used the misappropriated funds to make personal purchases, such as restaurant meals, a bicycle, jewelry, and to make payments on personal lines of credit.

7. The defendant falsely represented to Azteca that the funds paid to him were for legitimate business purposes.

8. These misappropriations and their concealment by the defendant were done with the intent to deceive and defraud Azteca.

9. Azteca reasonably relied upon the defendant's representation that these expenditures were related to the business of Azteca. In the exercise of due and reasonable care, Azteca could not have discovered that the defendant had misrepresented and concealed the true fact that these funds had been misappropriated for his personal benefit.

10. The true facts were not discovered until Azteca conducted an investigation after the defendant left Azteca's employ on July 23, 2004.

11. The defendant was employed by Azteca from July 9, 1999 until July 23, 2004 pursuant to a written contract.

12. In that written contract, the defendant agreed to abide by Azteca's credit card and company check usage policies. Those policies prohibited him from using Azteca's credit cards and bank accounts for personal purposes. See Exhibits 4, 5 and 6, each of which was signed by the defendant.

13. There was no agreement, whether written, oral, or tacit, between Azteca and the defendant authorizing or permitting him to use, or cause to be used, Azteca's credit cards or its bank accounts for his personal purposes and benefit.

14. At all times during his employment, the defendant had management responsibilities that vested him with discretionary authority to use his judgment in the furtherance of Azteca's business and to act on its behalf. The defendant began as an operations manager and rose to be a vice-president of AZTECA, both of which were management positions.

15. The defendant was the organizer and sole managing member of Cedar Creek Associates from the date of its formation.

16. As part of his scheme to misappropriate $136,518.02 from Azteca as described above, the defendant submitted to Azteca false invoices from Cedar Creek Associates, LLC. This was done to disguise and conceal his misappropriation of Azteca's funds.

17. The defendant accomplished this concealment by depositing, or causing the deposit, into the bank account of Cedar Creek Associates LLC, Azteca check numbers 016605 ($33,000.00), 6299 ($35,606.25) and 6138 ($39,330.00) in payment of false invoices purportedly owed to Cedar Creek Associates LLC by AZTECA.

///

18. The defendant was overpaid by Azteca for vacation time he had not accrued in the amount of $1,851.38.

19. The defendant was paid his wages for the week ending July 23, 2004 at his contract rate of $1,300 per week. When he left Azteca's employ he was owed nothing for unused vacation. He nonetheless received 18 days of vacation pay in excess of what he had earned. Because of this overpayment, Azteca appropriately offset any amounts it owed to the defendant for expenses related to a South Carolina business trip taken by the defendant for Azteca.

### Conclusions of Law

1. The plaintiff voluntarily dismissed the first claim for relief.

2. Azteca was insolvent, within the meaning of California Civil Code § 3439.05 from January 1, 2002 until the filing of its bankruptcy petition on December 14, 2004.

3. While Azteca was insolvent, the defendant caused Azteca to make unauthorized and fraudulent transfers to himself. However, the plaintiff has not established these transfers are recoverable as fraudulent transfers pursuant to California Civil Code § 3439.05 because the plaintiff is not a creditor of Azteca. Section 3439.05 permits a creditor of a transferor to pursue a fraudulent transfer from a transferee. The plaintiff is the bankruptcy trustee of Azteca, not one of its creditors. In order to pursue a claim under section 3439.05 the trustee must rely upon 11 U.S.C. § 544(b). Section 544(b) permits a bankruptcy trustee to assert the rights of an actual creditor who, but for

the filing of the bankruptcy petition, could avoid the transfer of the debtor's property under an applicable nonbankruptcy law, such as section 3439.05. The plaintiff here has not proven the existence of such a creditor and therefore is entitled to no relief on his second claim for relief.

4. The defendant misappropriated $136,518.02 from Azteca by using Azteca's credit cards and company checks for his personal benefit rather than for the benefit of Azteca. This misappropriation, however, cannot be recovered as a conversion of Azteca's personal property. Under California law, money cannot be the subject of conversion unless the defendant takes specific, identifiable money. For instance, a merchant who fails to turn over money received from the sale of consigned property is liable for conversion. See Fischer v. Machado, 50 Cal. App.4th 745, 748 (1957). In this case, the defendant did not raid a particular fund or sum of money belonging to Azteca. He presented checks to Azteca's bank for payment and used its credit cards. This is not the conversion of particular money belonging to Azteca and were the court to rule to the contrary, it would be holding that every misappropriation of money amounts to conversion. This is not the case and so the plaintiff shall take nothing on his third claim for relief.

5. The defendant was employed by Azteca from July 19, 1999 to July 23, 2004 pursuant to a written contract, the terms of which prohibited the personal use of company credit cards and checks.

6. During the period of his employment, the defendant was bound by the terms of his written contract with Azteca, including

the implied covenant of good faith and fair dealing present in all California contracts. See Foley v. Interactive Data Corp., 47 Cal.3d 654, 682-83 (1988).

7. The defendant's written employment agreement with Azteca prohibited the use of company credit cards and checks for personal purposes. The defendant breached his written employment agreement with Azteca by using Azteca credit cards and checks for his personal purposes and benefit in the amount of $136,518.02, as summarized in Appendix One hereto. The defendant is liable to the bankruptcy estate of Azteca on the fourth claim for relief in the amount of $136,518.02 for this breach of his employment contract.

8. The defendant was employed in a management position by Azteca and he exercised discretionary authority on its behalf. At all times, the defendant knew that Azteca expected him to act with the utmost loyalty and candor in respect to Azteca's business affairs and use of its money and property.

9. At all times during his employment by Azteca, the defendant was in a fiduciary relationship with his employer requiring the defendant to exercise the most scrupulous observance of his duties and to protect the interests and assets of Azteca and to refrain from doing anything that would injure Azteca or deprive it of profit or advantage. See GAB Business Services, Inc. v. Lindsey and Newsom Claim Services, Inc., 83 Cal. App.4th 409, 417 (2000).

10. The defendant breached his fiduciary duty to Azteca by misappropriating $136,518.02 from Azteca by the unauthorized use of its credit cards and bank account for his personal benefit.

Therefore, on the fifth claim for relief, the defendant is liable to Azteca's bankruptcy estate for his breach of fiduciary duty.

11. The defendant committed actual fraud within the meaning of California Civil Code § 1572(1) and (3). The defendant also perpetrated a deceit, within the meaning of California Civil Code § 1710( 1), (2) and (3), upon Azteca that was the direct and proximate cause of actual damage to Azteca in the amount of $136,518.02. Therefore, on the sixth claim for relief, the plaintiff shall recover for the bankruptcy estate the proximate damage caused to Azteca by this actual fraud and deceit, the sum of $136,518.02.

12. The misappropriation of Azteca's money and property was committed by the defendant maliciously, oppressively, and with the intent to defraud Azteca. This misappropriation was unlawful and tortious under California Civil Code § 3294(a), and it was the direct and proximate cause of damage to Azteca in the amount of $136,518.02. The plaintiff is entitled to recover from the defendant exemplary and punitive damages in the amount of $50,000 for the purpose of example and by way of punishing the defendant.

13. The plaintiff has not violated California Labor Code §§ 201, 202, or 203 regarding the payment of wages and other amounts allegedly due to the defendant. The defendant shall take nothing on his counter-claim and his proof of claim shall be disallowed.

To the extent that any portion of a Finding of Fact contains or constitutes a Conclusion of Law, such portion shall be deemed to be a Conclusion of Law, and to the extent that any portion of a Conclusion of Law contains or constitutes a Finding of Fact, such portion shall be deemed a Finding of Fact.

A separate judgment shall be entered.  A proposed form of judgment shall be lodged by the plaintiff.

Dated: 30 Sept. 2008

By the Court

Michael S. McManus, Chief Judge
United States Bankruptcy Court

# APPENDIX ONE

# Summary of Charges, Checks and Wage Overpayments

| Date Range | Exhibit # | Description | Dollar Amount |
|---|---|---|---|
| 3/25/2000 - 12/10/2000 | 7 | Fraudulent Charges to Azteca Company Visa Card (2483-3692) | $2,037.40 |
| 12/16/2000 - 1/11/2002 | 7 | Fraudulent Charges to Azteca Company Visa Card (2483-3692) | $10,681.05 |
| 1/19/2002 - 1/07/2003 | 7 | Fraudulent Charges to Azteca Company Visa Card (2483-3692) | $10,552.79 |
| 11/23/2001 - 12/21/2002 | 16 | Fraudulent Charges to Azteca Company American Express Card | $11,546.88 |
| 1/20/2003 - 10/30/2003 | 7 | Fraudulent Charges to Azteca Company Visa Card (2483-3692) | $9,927.09 |
| 12/20/2002 - 12/01/2003 | 9, 10 | Fraudulent Checks | $89,922.43 |
| Through 07/25/2004 | 14 | Wage Overpayments | $1,851.38 |
| TOTAL REFUNDABLE TO AZTECA | | | $136,518.02 |

**CERTIFICATE OF MAILING**

I, Susan C. Cox, in the performance of my duties as a judicial assistant to the Honorable Michael S. McManus, mailed by ordinary mail to each of the parties named below a true copy of the attached document.

Christopher Sullivan
1 Ferry Bldg #220
San Francisco, CA 94111

McGrane Greenfield LLP
40 South Market Street, 7th Floor
San Jose, CA 95113

Thomas Tanke
3788 Pardee Ct
El Dorado Hills, CA 95762

Michael Burkart
5150 Fair Oaks Blvd #101-185
Carmichael, CA 95608

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814

Dated: October 1, 2008

Susan C. Cox
Judicial Assistant to Judge McManus